UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INTEGRATIVE HEALTH INSTITUTE PLLC, *et al.*,

    Plaintiffs,

    v.

CHRISTINE SCHAFFNER, *et al.*,

    Defendants.

Case No. C20-1471-RAJ-MLP

REPORT AND RECOMMENDATION

## I. INTRODUCTION

This matter is before the Court on Counterclaim Defendant Dr. Dietrich Klinghardt's ("Dr. Klinghardt") Motion for Summary Judgment ("Counterclaim Defendant's Motion"). (Counterclaim Def.'s Mot. (Dkt. # 130).) Dr. Klinghardt seeks dismissal of Counterclaim Plaintiffs Dr. Christine Schaffner and Bella Fiore Klinik, PLLC's ("BFK") claims for: (1) misrepresentation; (2) tortious interference; (3) defamation; (4) breach of the duty of good faith and fair dealing; and (5) "constructive discharge."[1] (*Id.* at 2.) The Court heard oral argument from the parties on March 17, 2022. (Dkt. # 156.)

---

[1] Dr. Klinghardt does not seek dismissal of Dr. Schaffner's claim for declaratory judgment. (Counterclaim Def.'s Mot. at 2.)

REPORT AND RECOMMENDATION - 1

Having considered Counterclaim Defendant's Motion, the parties' submissions, oral argument, the balance of the record, and the governing law, the Court recommends that Counterclaim Defendant's Motion (dkt. # 130) be GRANTED in part and DENIED in part, as further explained below.

## II.     BACKGROUND

In 2010, Dr. Schaffner and Dr. Klinghardt began working together in the field of naturopathic medicine. (Answer (dkt. # 72) at 18, ¶ 7.) At that time, Dr. Schaffner was a resident at the Comprehensive Medical Center in Kirkland, Washington, and Dr. Klinghardt worked at the same facility. (*Id.*) In June 2012, Dr. Klinghardt and Dr. Schaffner formed the Integrative Health Institute, PLLC d/b/a/ Sophia Health Institute ("SHI"), which was later amended to be wholly owned by Dr. Klinghardt. (*Id.* at 18-19, ¶ 14; Kyllo Decl., Exs. A (dkt. # 131-1) at 2-4, B (dkt. # 131-2) at 2.) Dr. Klinghardt employed Dr. Schaffner and appointed her as the sole manager of the SHI. (Answer at 19, ¶ 15.) Dr. Schaffner alleges that shortly after the formation of the SHI, Dr. Klinghardt represented to her that over time he would convey his ownership interest in the SHI to her as part of a succession plan for his retirement. (Answer at 18-19, ¶ 14; Olsen Decl., Ex. A (dkt. # 144-1) at 2-3, 12-13 (Schaffner Dep. at 41:4-42:8, 221:2-222:8).)

In 2012, Daniel Schaffner, Dr. Schaffner's husband, and Dr. Klinghardt formed Sophia Nutrition to sell dietary supplements. (Answer at 18-19, ¶ 14.) The SHI and Sophia Nutrition business plan sought to create a clinic network called the "Sophia Health Network" that would accredit treatment philosophies, training, practices, and educational materials of the kind demonstrated by Dr. Klinghardt and would provide for his transition out of practice and retirement. (Answer at 19, ¶ 17; Olsen Decl., Ex. A at 4-5 (Schaffner Dep. at 43:22-44:10).)

In April 2013, Dr. Schaffner formed BFK, which provides similar services as the SHI, but remained under the Sophia Health Network. (Answer at 19-20, ¶ 18.) Dr. Schaffner is the sole owner of BFK. (*Id.* at 4, ¶ 19.) In July 2015, Sophia Education was formed, with Dr. Klinghardt and Dr. Schaffner as equal owners. (*Id.* at 20, ¶ 22; Olsen Decl., Ex. A at 9-11 (Schaffner Dep. at 143:20-145:17).) In August 2017, KS Distributors was formed, and Dr. Klinghardt and Dr. Schaffner were named as equal owners. (Second Am. Compl. (dkt. # 64) at ¶ 22.) Sophia Education and KS Distributors were also part of the Sophia Health Network. (Answer at 20, ¶ 22; *see also* Olsen Decl., Exs. A at 9-11 (Schaffner Dep. at 143:20-145:17), B (dkt. # 144-2) at 2 (BFK Dep. at 169:2-24).)

In 2014 and 2015, Dr. Schaffner alleges that the Sophia Health Network encountered growth and operational challenges. (Answer at 20, ¶ 20.) Specifically, Dr. Schaffner alleges Dr. Klinghardt began to interfere with personnel matters, engaged in an inappropriate physical relationship with a SHI employee, made inappropriate comments on the physical appearance of female staff, and instructed managers to hire more attractive employees. (*Id.*; Schaffner Decl., Exs. E (dkt. # 145-5) at 2, F (dkt. # 145-6) at 2.) In one such instance, in March 2014, Dr. Klinghardt texted Dr. Schaffner that "you and the team could pose anytime for [P]layboy magazine and noone (sic) would believe they are all real!" (Schaffner Decl., Ex. F at 2; *see also* Olsen Decl., Ex. C (dkt. # 144-3) at 24-26 (Klinghardt Dep. at 221:16-21, 223:17-24, 225:9-12).)

In April 2016, Dr. Schaffner alleges that Dr. Klinghardt's romantic partner incorporated "KI Science Limited" ("KI Science"), which Dr. Schaffner claims became a direct competitor for supplement sales with Sophia Nutrition. (Answer at 21, ¶ 25.) Dr. Schaffner alleges Dr. Klinghardt promised her KI Science would remain exclusively in Europe and that he would not recommend its products to patients in the United States. (*Id.*) However, Dr. Schaffner alleges Dr.

REPORT AND RECOMMENDATION - 3

Klinghardt frequently advertised KI Science products in his SHI social media videos and that KI Science directly competes with KS Distributors by selling copycat products. (*Id.*)

Throughout 2017 and 2018, Dr. Schaffner alleges that her efforts in the Sophia Health Network began to "steadily pay off," revenue from Sophia Nutrition increased, and the online and social media presence of the Sophia Health Network grew. (Answer at 21, ¶ 27.) However, instead of promoting the Sophia Health Network entities, Dr. Schaffner alleges Dr. Klinghardt used the Sophia Education media platform to promote the Klinghardt Institute and KI Science. (*Id.*)

At some unidentified point in time, Dr. Schaffner alleges Dr. Klinghardt began to have his will established and told her that he would provide that full ownership of the SHI would be transferred to her upon his passing, and that he would convey 30 percent of his ownership to her by the time he was 70 years old. (Answer at 22, ¶ 32; Schaffner Decl. (dkt. # 145) at ¶¶ 4-6.) To fulfill the succession plan, Dr. Klinghardt agreed to vest ownership interest to Dr. Schaffner over time and did so through the execution of the March 6, 2019 Resolution ("the Resolution"). (Answer at 22-23, ¶ 33; Schaffner Decl., Ex. C (dkt. # 145-3) at 2-5.) The Resolution provided for Dr. Schaffner's 30 percent ownership of the SHI by October 20, 2020. (Schaffner Decl., Ex. C at 2.) In early 2020, Dr. Schaffner alleges that she and Dr. Klinghardt continued discussions regarding the succession plan, but that the conversations changed after Dr. Klinghardt sought to have her execute an amended operating agreement for the SHI that contradicted their previously agreed succession plans. (*Id.*) (Answer at 23-24, ¶ 39.)

In April 2020, after several difficulties relating to the COVID-19 pandemic, Dr. Klinghardt sent Dr. Schaffner a letter generally questioning her business judgment of the SHI and requesting an overhaul of operations. (Answer at 24, ¶ 42; *see also* Schaffner Decl., Ex. G

REPORT AND RECOMMENDATION - 4

(dkt. # 145-7) at 2-3.) In June 2020, Dr. Schaffner sought to resolve her differences with Dr. Klinghardt by advancing the succession plan and proposing a transition with consideration to be paid to Dr. Klinghardt. (Answer at 24, ¶ 44.) On September 2, 2020, Dr. Klinghardt responded with a counteroffer that provided Dr. Schaffner 48 hours to respond. (Answer at 25, ¶ 46.) On September 6, 2020, the next business day after the counteroffer expired, Dr. Klinghardt notified Dr. Schaffner that she was terminated from her employment and then brought this lawsuit on September 8, 2020. (*Id.* at 25, ¶ 47; Kyllo Decl., Ex. D (dkt. # 131-4) at 2.) Dr. Schaffner resigned from her employment with the SHI on September 8, 2020. (Answer at 25, ¶ 47; Schaffner Decl., Ex. H (dkt. # 145-8) at 2.)

Dr. Schaffner alleges that after her departure from the SHI, Dr. Klinghardt spoke negatively about her in a September 24, 2020 YouTube webinar video. (Answer at 26, ¶ 53; Neace Decl. (dkt. # 147) at 2; *see also* Olsen Decl., Ex. C at 28 (Klinghardt Dep. at 232:5-16).) The September 24, 2020 YouTube video is not in the possession of Dr. Klinghardt and has since become private or inaccessible.[2] Dr. Schaffner further alleges Dr. Klinghardt made false statements to SHI employees about her, including that Dr. Klinghardt told SHI staff that she inflated supplement prices (Christensen Decl. (dkt. # 146) at ¶ 2.) As a result, Dr. Schaffner alleges multiple practitioners did not join her clinic after leaving the SHI and instead sought employment elsewhere. (Answer at 26, ¶ 51; Schaffner Decl. at ¶ 9, Ex. D (dkt. # 145-4) at 2-3.)

In November 2020, Dr. Schaffner alleges that BFK was notified that SHI's administrator Laura Otto refused to approve a transfer of patient records to BFK and Marin Naturopathic Medicine, a clinic in California that Dr. Schaffner acquired. (Answer at 26, ¶ 54; Olsen Decl., Ex. B at 10-11 (BFK Dep. at 191:7-25, 196:10-20); Schaffner Decl. at ¶ 7.) Dr. Schaffner further

---

[2] On February 7, 2022, Counterclaim Plaintiffs issued a subpoena to Google for production of the September 24, 2020 YouTube video. (Olsen Decl., Ex. D (dkt. # 144-4) at 2-10.)

REPORT AND RECOMMENDATION - 5

1   alleges that her patients had to individually request medical record transfers from the SHI, but
2   that 78 such requests were not responded to. (Schaffner Decl. at ¶ 8.)

### III.  DISCUSSION

Per Dr. Klinghardt, Counterclaim Plaintiffs agreed to voluntarily dismiss their abuse of process claim but failed to formally withdraw it. (Counterclaim Def.'s Mot. at 3 n.3.) Counterclaim Plaintiffs offered no objection to the dismissal of the claim in their responsive briefing and acknowledged at oral argument that it was stipulated. (*See* Counterclaim Pls.' Resp.; dkt. # 158 (Draft Tr. at 31).) Accordingly, the abuse of process claim has been conceded and should be dismissed.

The Court addresses the parties' remaining arguments in turn:

### A.  Summary Judgment Standard

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation and internal quotations omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.*; *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

### B.     Misrepresentation

Dr. Schaffner first raises a misrepresentation claim on the basis that Dr. Klinghardt made promises to her so that she would continue to manage the SHI, induced her to grow the Sophia Health Network under a false succession and network plan, and that he knew such representations were false and would be relied upon by Dr. Schaffner. (Answer at 26-27, ¶¶ 57-60.) Dr. Klinghardt argues that Dr. Schaffner's misrepresentation claim fails because the dispute essentially boils down to a business disagreement between the parties, and that she fails to set forth evidence of misrepresentation to support her claim. (Counterclaim Def.'s Mot. at 7-9; Counterclaim Def.'s Reply (dkt. # 148) at 3.) Specifically, Dr. Klinghardt argues that the misrepresentation claim fails to adhere to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud, and that even if it did, her claim generally relates only to promises of

REPORT AND RECOMMENDATION - 7

1  future partnerships or agreements. (Counterclaim Def.'s Mot. at 7-8.) Dr. Klinghardt additionally

2  argues that Dr. Schaffner has provided no evidence of damages. (*Id.* at 9.)

3       Dr. Schaffner counters that Dr. Klinghardt made misrepresentations in the Resolution

4  regarding Dr. Schaffner's eventual ownership interest in the SHI, which induced her to remain

5  his business partner for nearly 18 months, and that the evidence establishes claims for fraudulent

6  and negligent misrepresentation. (Counterclaim Pls.' Resp. at 11-13.) Dr. Schaffner further

7  argues that the Resolution was not a future promise, but a present representation that awarded her

8  ownership interest in the SHI, and that she has otherwise provided sufficient evidence of her

9  damages. (*Id.* at 12-13.)

10      Rule 9(b) requires a plaintiff plead "fraud or mistake" with particularity. Fed. R. Civ. P.

11  9(b). This generally requires allegations "specific enough to give defendants notice of the

12  particular misconduct . . . [and] must be accompanied by the who, what, when, where, and how

13  of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

14  2003) (citations and internal quotations omitted). For such claims, "the complaint must set forth

15  what is false or misleading about a statement, and why it is false." *Rubke v. Capitol Bancorp*

16  *Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (citations and internal quotations omitted).

17      First, Dr. Schaffner's pleading of her misrepresentation claim sufficiently satisfies Rule

18  9(b)'s requirements. Dr. Schaffner's misrepresentation claim clearly identifies that the course of

19  dealing between Dr. Schaffner and Dr. Klinghardt in regard to the Resolution, and that Dr.

20  Klinghardt's representation of its function in their overall succession plan for the SHI, was false

21  and misleading. (*See* Answer at 26-27, ¶¶ 57-60.) Specifically, despite the explicit nature of the

22  Resolution and its reference of the transition of ownership interest to Dr. Schaffner, Dr.

23  Schaffner's claim alleges a false representation of existing fact due to Dr. Klinghardt's

REPORT AND RECOMMENDATION - 8

unexpressed subjective intent that additional agreements— in relevant part, the execution of a "Phantom Stock Agreement," a revised Employment Agreement, and an Amended SHI Operating Agreement—were necessary for the Resolution to become effective. (*See id.* at 5-6, ¶ 27; *id.* at 23-24, ¶ 39.)

Next, despite a lack of clarity in her pleadings, it appears Dr. Schaffner intends to proceed on this claim under both a fraudulent and negligent misrepresentation theory. (*See* Answer at 26-27, ¶¶ 57-60; Counterclaim Pls.' Resp. at 11-12.) Under Washington state law, a fraudulent misrepresentation claim requires "clear, cogent, and convincing evidence" of : (1) a representation of existing fact; (2) that is material; (3) and false; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce another to act; (6) ignorance of its falsity by the listener; (7) the latter's reliance on the truth of the representation; (8) her right to rely on it; and (9) consequent damage. *See e.g.*, *Elcon Const. Inc. v. Eastern Wash. Univ.*, 174 Wn.2d 157, 166 (2012); *Baker Boyer Nat'l Bank v. Foust*, 6 Wn. App.2d 375, 381 n.4 (Wash. Ct. App. 2018).

Here, Dr. Schaffner has provided sufficient evidence to demonstrate genuine issues of material fact exist as to her fraudulent misrepresentation claim. In sum, per Dr. Schaffner's evidence: (1) Dr. Klinghardt represented in the Resolution that he would transfer ownership interest in the SHI; (2) the Resolution was material as it represented the parties' succession plan; (3) Dr. Klinghardt's representation was false because he subjectively believed other conditions were required for the transfer of ownership interest; (4) Dr. Klinghardt had knowledge of such falsity; (5) Dr. Klinghardt intended for Dr. Schaffner to rely on the Resolution so that she would continue to manage the SHI; (6) Dr. Schaffner was not aware that the Resolution did not actually grant her ownership interest; (7) Dr. Schaffner relied on the Resolution as the succession plan for the SHI; (8) Dr. Schaffner had a right to rely on the Resolution because of the parties' course of

1  conduct and because it was signed by Dr. Klinghardt; and (9) Dr. Schaffner has been damaged
2  because she continued to manage the SHI rather than dedicate time to her business entities. (*See*
3  Schaffner Decl. at ¶¶ 4-6, Ex. C at 2-5, Ex. J (dkt. # 145-10) at 2; Olsen Decl., Exs. A at 12-14
4  (Schaffner Dep. at 221:13-223:11), B at 12-14, 19-20 (BFK Dep. at 198:21-200:1,
5  209:22-210:2), C at 18-22 (Klinghardt Dep. at 199:3-203:24).)

6      Furthermore, it similarly appears Dr. Schaffner has set forth sufficient evidence showing
7  genuine issues of material exist on this claim under a negligent misrepresentation theory. A
8  defendant is liable for negligent misrepresentation where: (1) the defendant supplied false
9  information; (2) the defendant knew or should have known the false information was supplied as
10 guidance in the plaintiff's business transactions; (3) the defendant was negligent in obtaining or
11 communicating the false information; (4) the plaintiff relied on the false information; (5) the
12 plaintiff's reliance was reasonable; and (6) the false information proximately caused the
13 plaintiff's damages. *Ross v. Kirner*, 162 Wn.2d 493, 499-500 (2009). In this case, Dr. Schaffner
14 has set forth evidence demonstrating: (1) the Resolution was supplied to her and was false
15 information because it failed to identify Dr. Klinghardt's conditions for the grant of ownership
16 interest; (2) Dr. Klinghardt knew she would rely on the Resolution in furtherance of their
17 succession plan; (3) Dr. Klinghardt was negligent in failing to identify any necessary conditions
18 that would allow for the grant of ownership interest in the SHI; (4) Dr. Schaffner relied on the
19 Resolution in continuing her employment at the SHI; (5) Dr. Schaffner's reliance was reasonable
20 based on the succession plan discussions; and (6) Dr. Schaffner's reliance on the Resolution
21 caused her damages. (*See* Schaffner Decl. at ¶¶ 4-6, Ex. C at 2-5, Ex. J at 2; Olsen Decl., Exs. A
22 at 12-14 (Schaffner Dep. at 221:13-223:11), B at 12-14, 19-20 (BFK Dep. at 198:21-200:1,
23 209:22-210:2), C at 18-22 (Klinghardt Dep. at 199:3-203:24).)

Under either theory then, it is clear that this was not just a business disagreement between Dr. Schaffner and Dr. Klinghardt, and that genuine issues of material fact exist based on the disputed function of the Resolution, the course of the parties' formation of the succession plan for SHI, what the parties subjectively intended by the Resolution, and whether further agreements were in fact necessary for any transfer of ownership interest to Dr. Schaffner. Furthermore, it does not appear that the Resolution was a future promise to Dr. Schaffner, but instead a definite and memorialized agreement that would convey ownership interest in the SHI to Dr. Schaffner across a period of time. (*See* Schaffner Decl., Ex. C at 2-5.) Dr. Schaffner has also provided sufficient evidence of damages based on her testimony regarding how she was able to grow her patient base once she was able to dedicate more time to her business entities and because she has provided financial records demonstrating growth of her business entities since she left the SHI. (*See* Olsen Decl., Ex. B at 12-14, 19-20 (BFK Dep. at 198:21-200:1, 209:22-210:2); dkt. # 122-1 at 9 (financial records).)

Because genuine issues of material fact exist in regard to several elements of Dr. Schaffner's misrepresentation claim on either of her theories, Dr. Klinghardt's motion for summary judgment should be denied on this claim.

### C. Tortious Interference

Next, Dr. Schaffner and BFK raise a claim of tortious interference alleging that Dr. Klinghardt, with knowledge of Dr. Schaffner's and BFK's existing and prospective business and patient relationships, interfered with said relationships for an improper purpose. (Answer at 27, ¶¶ 61-63.) Dr. Klinghardt argues that summary judgment is appropriate on the tortious interference claim because Counterclaim Plaintiffs fail to identify any business expectancies that were intentionally interrupted by Dr. Klinghardt nor provide evidence of a non-party that

REPORT AND RECOMMENDATION - 11

intended to work for Dr. Schaffner or BFK but for Dr. Klinghardt's actions. (Counterclaim Def.'s Mot. at 9-10.) Dr. Klinghardt further argues that Dr. Schaffner fails to provide evidence he did anything intentionally and fails to demonstrate she suffered any damages. (*Id.* at 10.)

Counterclaim Plaintiffs counter that Dr. Klinghardt tortiously interfered with BFK's and Dr. Schaffner's prospective practitioners because she had valid business expectancies with at least two practitioners, Dr. Kara Nakisbendi and Dr. Jenn Grushon, whom Dr. Schaffner claims wanted to join her practice but did not do so because of Dr. Klinghardt. (Counterclaim Pls.' Resp. at 13-15.) Counterclaim Plaintiffs additionally argue Dr. Klinghardt later interfered with patient records being sent to Dr. Schaffner's entities after she left. (*Id.* at 15.) In the alternative, Counterclaim Plaintiffs raised at oral argument that a continuance under Federal Rule of Civil Procedure 56(d) is appropriate because discovery has yet to close. (*See* dkt. # 158 (Draft Tr. at 19).)

Rule 56(d) allows the Court to deny or continue a motion for summary judgment if the defending party establishes that it is unable to properly defend against the motion. Fed. R. Civ. P. 56(d). Under Rule 56(d), a party's request must be: "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004). The movant "must make clear what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998).

There is no evidence in the record demonstrating Dr. Nakisbendi, Dr. Grushon, nor any other non-party were stopped by Dr. Klinghardt from working for Dr. Schaffner or BFK. The evidence in the record to this point demonstrates that Dr. Nakisbendi and a Dr. Tara Boyd did

have interest in joining Dr. Schaffner after she left the SHI (*see* Schaffner Decl. at ¶ 9, Ex. D at 2-3), but there is no evidence suggesting Dr. Klinghardt actually took actions that deterred any practitioner from seeking employment with Dr. Schaffner. There is also a lack of evidence in the record as to what effect any delay in receiving patient records had on Dr. Schaffner's practice or any of her patients.

Nevertheless, the Court finds deferred consideration of the tortious interference claim appropriate. Counterclaim Plaintiffs at oral argument noted that discovery remains open and identified several pieces of relevant discoverable information for this claim precluding summary judgment. Chiefly, Counterclaim Plaintiffs proffered that: (1) Dr. Klinghardt testified he was aware Dr. Nakisbendi and Dr. Grushon had offers to join Dr. Schaffner's clinic; (2) Counterclaim Plaintiffs have yet to receive several text message communications relevant to this claim in discovery; (3) and that testimony from a recent deposition witness indicated Dr. Klinghardt held a meeting where he told SHI staff that Dr. Schaffner was lying and stealing from him after her termination. (*See* dkt. # 158 (Draft Tr. at 17-18).)

Based on Counterclaim Plaintiffs' representations at oral argument that outstanding discovery remains pertinent to their tortious interference claim, Dr. Klinghardt's motion for summary judgment on this claim should be denied without prejudice, pursuant to Rule 56(d), to later consideration after the close of discovery.

**D.   Defamation**

Dr. Schaffner raises a defamation claim premised on alleged defamatory statements Dr. Klinghardt made to his social media followers in a YouTube video and to SHI staff regarding her departure from the SHI. (Answer at 28, ¶¶ 71-73.) Dr. Schaffner alleges such statements were false and caused her harm because the statements resulted in SHI employees breaking plans to

REPORT AND RECOMMENDATION - 13

1  join her and caused her reputational harm. (*Id.* at 28, ¶ 72.) Dr. Schaffner argues that Dr.
2  Klinghardt's statements tarnished her professional reputation and constituted defamation per se.
3  (Counterclaim Pls.' Resp. at 15-16.) In the alternative, Dr. Schaffner seeks deferred
4  consideration on this claim, per Rule 56(d), until she is able to obtain a copy of the YouTube
5  video. (*Id.* at 16.)

6  Dr. Klinghardt argues that the defamation claim should be dismissed because Dr.
7  Schaffner fails to identify the content of any alleged defamatory statements and has no proof
8  such statements were made. (Counterclaim Def.'s Mot. at 11-12.) Dr. Klinghardt responds that
9  deferral is also not appropriate because Dr. Schaffner had over a year to obtain the YouTube
10 video, failed to do so, and that there is no evidence in the record of anyone else coming forward
11 about the alleged defamatory subject matter. (Counterclaim Def.'s Reply at 6.)

12 On the record before the Court, there is no evidence as to any defamatory statements
13 made by Dr. Klinghardt, the content of the alleged YouTube video, or any resulting damage to
14 Dr. Schaffner's reputation. At this point, Dr. Schaffner has only demonstrated the existence of a
15 September 24, 2020 YouTube webinar video where Dr. Klinghardt allegedly spoke about her
16 departure from the SHI. (*See* Neace Decl. at 2; *see also* Olsen Decl., Ex. C at 28 (Klinghardt
17 Dep. at 232:5-16).) However, because Dr. Schaffner has a pending subpoena seeking the
18 YouTube video, and discovery has yet to close, the Court finds summary judgment on this claim
19 should also be denied without prejudice pursuant to Rule 56(d).

20  **E.  Breach of the Duty of Good Faith and Fair Dealing**

21 Per her pleadings, Dr. Schaffner raises a claim for breach of the duty of good faith and
22 fair dealing because Dr. Klinghardt is a member of the SHI, Sophia Nutrition, Sophia Education,
23 and KS Distributors, but failed to provide her notice of an attempt to initiate a derivative action

on behalf of the entities. (Answer at 28-29, ¶¶ 74-76.) Dr. Schaffner alleges Dr. Klinghardt further breached the duty by taking unauthorized actions on behalf of the entities, seeking to restrict Dr. Schaffner's managerial ability, and by accusing her of tortious conduct. (*Id.* at 29, ¶ 75.)

Dr. Klinghardt argues this claim should be dismissed because Dr. Schaffner has not identified a contract, nor a specific term Dr. Klinghardt has breached, and that she has no evidence to support breach or resultant damages. (Counterclaim Def.'s Mot. at 13-14.) In her response, Dr. Schaffner contends that Dr. Klinghardt breached the duty of good faith and fair dealing because, as a member of KS Distributors, he advised her to take several business actions concerning "Sophia Flow," a body cream, but then sued her for breach of fiduciary duty for selling the product. (Counterclaim Pls.' Resp. at 16.)

To avoid summary judgment on a claim for breach of the duty of good faith and fair dealing, a plaintiff must show a genuine issue of material fact as to: (1) a binding contract; (2) a duty to act in good faith arose in relation to the performance of a specific contract term; (3) the defendant breached that duty; and (4) the breach caused plaintiff to suffer cognizable damages. *See Hesketh v. Total Renal Care, Inc.*, 2021 WL 5761610, at *7 (W.D. Wash. Dec. 3, 2021) (citing *Microsoft Corp. v. Motorola, Inc.*, 963 F.Supp.2d 1176, 1184-86 (W.D. Wash. 2013)). The duty of good faith and fair dealing arises only in connection with terms agreed to by the parties. *Id.* at *12 (quoting *Johnson v. Yousoofian*, 84 Wn. App. 755, 762 (Wash. Ct. App. 1996) ("The implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations. If there is no contractual duty, there is nothing that must be performed in good faith.").

Dr. Schaffner has failed to point to any specific contractual provision that was not performed in good faith by Dr. Klinghardt. Consequently, Dr. Schaffner has failed to set forth a breach of the duty of good faith and fair dealing claim. *See Hesketh*, 2021 WL 5761610 at *14 (citing *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F.Supp.3d 1166, 1173-74 (W.D. Wash. 2014) ("Because the [c]ourt determined that no such contractual duties existed, there is also no duty to perform such obligations in good faith."). Moreover, based on the Court's review, it appears Dr. Schaffner's cited authority for this claim is inapposite as it stems from a breach of fiduciary duty claim, and not a claim for a breach of the duty of good faith and fair dealing. (*See* Counterclaim Pls.' Resp. at 16 (citing *Bishop of Victoria Corp. Sole v. Corp. Bus. Park, LLC*, 138 Wn. App. 443, 456 (Wash. Ct. App. 2007)). Consequently, summary judgment should be granted in favor of Dr. Klinghardt on this claim.

### F. Constructive Discharge

Finally, Dr. Schaffner alleges a claim for "constructive discharge" claiming that her resignation from the SHI was a constructive discharge, in violation of public policy, for opposing discrimination in the workplace and that her forced resignation was substantially motivated by her gender. (Answer at 29, ¶¶ 77-81.) Dr. Schaffner further alleges that though she was authorized to make personnel decisions, she was consistently overruled by Dr. Klinghardt, and that Dr. Klinghardt deliberately made conditions intolerable for her by second-guessing her managerial actions and allowing for a hostile work environment due to problematic personnel he kept on. (*Id.* at 29, ¶ 79.) Dr. Schaffner also alleges Dr. Klinghardt failed to correct his inappropriate behavior around female employees and would single out employees that he favored. (*Id.* at 29, ¶ 80.)

Dr. Klinghardt argues dismissal of the "constructive discharge" claim is warranted because Dr. Schaffner resigned from the SHI voluntarily and has failed to present any evidence of pervasive or extreme harassment. (Counterclaim Def.'s Mot. at 17-18.) Dr. Schaffner counters that Dr. Klinghardt forced her resignation because he belittled her, undermined her managerial efforts, told her inappropriate jokes that he would not share with other subordinate employees, and because he has a history of disparate treatment towards women. (Counterclaim Pls.' Resp. at 16-17.)

At oral argument, despite Dr. Schaffner's styling of this claim as a "constructive discharge" claim (*see* Answer at 29, ¶¶ 77-81), Dr. Schaffner clarified that this claim is raised as a hostile work environment claim on the basis of Dr. Schaffner's gender. (*See* dkt. # 158 (Draft Tr. at 31).) However, Dr. Schaffner did not indicate whether the claim was raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, or the Washington Law Against Discrimination ("WLAD"), RCW 49.60. (*See id.*)

To establish a prima facie hostile work environment claim under the WLAD, a plaintiff must show: (1) the harassment was unwelcome; (2) the harassment was because plaintiff was a member of a protected class; (3) the harassment affected the terms and conditions of employment; and (4) the harassment can be imputed to the employer. *Antonius v. King County*, 153 Wn.2d 256, 261 (2004). The third element requires the harassment be "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment . . . to be determined with regard to the totality of the circumstances." *Id.* (quoting *Glasgow v. Ga–Pac. Corp.*, 103 Wn.2d 401, 406-07 (1985)). In addition, Washington courts have held that hostile work environment claims under the WLAD "substantially parallel"

claims pursuant to Title VII. *See Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn. App. 774, 793-94 (Wash. Ct. App. 2005).

Here, Dr. Schaffner failed to clearly plead this claim as a hostile work environment claim based on her styling and allegations of this claim as a "constructive discharge" in her pleadings (*see* Answer at 29, ¶¶ 77-81) and revelation at oral argument that this was intended as a hostile work environment claim. On that basis alone, this claim is subject to dismissal. *See* Fed. R. Civ. P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (finding that the statement of a claim must be sufficient so as to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

But even if Dr. Schaffner had clearly raised a hostile work environment claim, under the totality of the circumstances and viewing the evidence in the light most favorable to Dr. Schaffner, Plaintiff's evidence fails to demonstrate severe or pervasive harassment by Dr. Klinghardt or anything more than "casual, isolated or trivial incidents" of a discriminatory environment. *See Crownover v. State ex rel. Dep't of Transp.*, 165 Wn. App. 131, 145 (Wash Ct. App. 2011) (citing *Payne v. Children's Home Soc'y of Wash., Inc.*, 77 Wn. App. 507, 514 (Wash. Ct. App. 1995)). Dr. Schaffner's evidence primarily stems from 2014 and is based on a single paragraph from a heavily redacted attorney letter concerning an allegation of sexual harassment arising from Dr. Klinghardt's previous relationship with a SHI physician and one text message from Dr. Klinghardt commenting on the physical appearance of female staff at the SHI.[3] (*See* Schaffner Decl., Exs. E at 2, F at 2.) Dr. Schaffner's continued employment at the

---

[3] At oral argument, Dr. Schaffner represented that testimony from Destiny Chirls also establishes her hostile work environment claim based on alleged requests made by Dr. Klinghardt to Ms. Chirls. However, there is nothing in Counterclaim Plaintiffs' response nor evidence in the record of such testimony from Ms. Chirls. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists.").

REPORT AND RECOMMENDATION - 18

SHI for almost six years after her supplied evidence belies her allegations concerning the severity and pervasiveness of Dr. Klinghardt's alleged behavior. And though Dr. Schaffner alleges she routinely felt belittled by Dr. Klinghardt, her evidence in support of that specific allegation appears to merely demonstrate Dr. Klinghardt's disagreement with her managerial efforts near the end of her tenure at the SHI (*see id.*, Ex. G at 2-3) and that Dr. Klinghardt made false or negative comments about her that post-date her employment (*see* Christensen Decl. at ¶ 3).

As Dr. Schaffner has failed to set forth evidence demonstrating harassment so pervasive so as to alter the conditions of her employment, or to otherwise suggest an intolerable or abusive work environment, Dr. Schaffner's "constructive discharge" claim should be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, this Court recommends that Counterclaim Defendant's Motion (dkt. # 130) be GRANTED in part and DENIED in part. Specifically, the Court recommends that: (1) Counterclaim Defendant's Motion be DENIED as to Dr. Schaffner's misrepresentation claim; (2) Counterclaim Defendant's Motion be DENIED without prejudice, pursuant to Fed. R. Civ. P. 56(d), as to Counterclaim Plaintiffs' claims for tortious interference and defamation; (3) Dr. Schaffner's claims for breach of the duty of good faith and fair dealing and constructive discharge be DISMISSED with prejudice; and (4) Counterclaim Plaintiffs' abuse of process claim be DISMISSED as stipulated by the parties. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your

1  right to appeal. Objections should be noted for consideration on the District Judge's motions
2  calendar for the third Friday after they are filed. Responses to objections may be filed within
3  **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be
4  ready for consideration by the District Judge on **April 15, 2022**.

      The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Richard A. Jones.

      Dated this 31st day of March, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20